IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JACOB SUDDATH and ELIZABETH SUDDATH, <br><br> Plaintiffs, <br><br> v. <br><br> OKLAHOME HOMEBUILDERS, LLC, et al., <br><br> Defendants. | ) ) ) ) ) ) ) Case No. CIV-24-745-SLP ) ) ) ) ) ) |

**O R D E R**

Before the Court is Defendants' Motion to Dismiss [Doc. No. 17]. Plaintiffs have filed their Response [Doc. No. 21] and the matter, therefore, is at issue and ready for determination. Also before the Court is Defendants' Motion for Temporary Restraining Order and Permanent Injunction with Brief in Support [Doc. No. 19] which is also at issue. *See* Plaintiffs' Response [Doc. No. 22]. For the reasons set forth below, Defendants' Motion to Dismiss, construed as a motion for judgment on the pleadings, is GRANTED as to Plaintiffs' sole federal claim and the Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. Additionally, the Court DISCHARGES Plaintiffs' Notice of Lis Pendens [Doc. No. 5] and DENIES as MOOT Defendants' Motion for Temporary Restraining Order and Permanent Injunction.

I.     **<u>Background</u>**

This action arises out of a failed agreement for the purchase and sale of a lot and construction of a home. Plaintiffs, Jacob Suddath and Elizabeth Suddath (Plaintiffs), wanted to purchase a lot and build a home on property owned by one or more of the Defendants. Ultimately, the parties' agreement was not consummated. Plaintiffs allege Defendants breached the agreement, and engaged in fraudulent and other wrongful conduct. Plaintiffs invoke this Court's federal question subject matter jurisdiction alleging the Defendants' conduct violated the Racketeer Influenced and Corrupt Organization Act (RICO).

Although entitled a "Motion to Dismiss", Defendants move pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings on grounds Plaintiffs' Complaint does not plausibly allege a RICO violation. As no other federal claim has been asserted, Defendants further request the Court to decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. Defendants also move for injunctive relief arising from Plaintiffs' filing of a notice of lis pendens against the property with the Clerk of Court of Oklahoma County, where the real property is located.

## II. Governing Standard

Rule 12(c) of the Federal Rules of Civil Procedure governs the Court's analysis.[1] Rule 12(c) provides that a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c).

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). The court applies the same standards under either rule. *Brown v. Montoya*, 662 F.3d 1152, 1160 n. 4 (10th Cir. 2011). The court accepts as true the complaint's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Schrock v. Wyeth Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013). But the court need not accept as true legal conclusions, and "naked assertions devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## III. Relevant Facts

The Court addresses the facts central to Plaintiff's RICO claim, alleged in Count I of the Complaint.[2] For the reasons discussed infra, the Court finds Plaintiffs have failed to

---

[1] Defendants attach matters outside the pleadings to their Motion. The Court has not considered those matters and, therefore, declines to convert the Motion into a summary judgment motion. *See, e.g., Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (in ruling on a motion to dismiss or a motion for judgment on the pleadings, courts apply the general rule of considering only the contents of the complaint).

[2] Counts II through VI of the Complaint allege violations of Oklahoma state law.

allege plausible allegations of a pattern of racketeering activity. The Court's recitation of the relevant facts is directed primarily to this issue.

In November 2023, Plaintiffs executed a Buyer Broker Services Agreement (Agreement) with Defendant OklaHome Real Estate Services, LLC (Okla Real Estate) as broker, and non-party Jesse Blanton (Mr. Blanton), as Plaintiffs' agent. Compl., ¶ 34; *see also* Agreement [Doc. No. 1-1]. Additionally, the parties entered into a Supplement. *Id.*, ¶ 35; *see also* Supplement [Doc. No. 1-2]. The Agreement and Supplement consummated negotiations between the parties for Plaintiffs to purchase land from Defendant OklaHome Homebuilders, LLC (Okla Homebuilders) and to have Okla Homebuilders build their home. Compl. [Doc. No. 1], ¶¶ 11-36.

Defendant Hodgens is the registered agent for Okla Real Estate. *Id.*, ¶ 6. He was present at initial meetings with Okla Homebuilders and Plaintiffs to discuss the design and build of the home. *Id.*, ¶¶ 16-17, 19-27. In the Supplement, Mr. Hodgens individually agreed to: (1) provide Plaintiffs with a discount of $50,000.00 off the final purchase price so that their home could be used as a "Parade Home" in 2024; and (2) sell the lot to Plaintiffs for $175,000.00. *Id.*, ¶ 36; *see also* Doc. No. 1-2. The Supplement provides that Plaintiffs were to make a $25,000.00 down payment which would include a $2500.00 design deposit. *Id.* On November 7, 2023, Plaintiffs tendered the $25,000.00 deposit to Okla Homebuilders. *Id.*, ¶ 37.

On December 13, 2023, Plaintiffs finalized the home design with Mr. Hodgens and others. *Id.*, ¶ 52. Plaintiffs then signed a Real Estate Purchase and Construction Contract

4

(Contract). *Id.*, ¶ 55; *see also* Doc. No. 1-3. Ultimately, the Contract was never completed. And Plaintiffs did not receive their deposit back. Although, as discussed below, a contract with different terms was discussed, no such contract was ever entered into amongst the parties.

### **Alleged RICO First Predicate Act**[3]

On March 1, 2024, Mr. Blanton told Plaintiff, Ms. Suddath, that Mr. Hodgens had been denied a construction loan on two occasions and that he was trying to establish a new relationship with a new lender. *Id.*, ¶ 108. The lender told Mr. Hodgens that "Defendant was not charging Plaintiffs enough for the home and that the margins were not correct." *Id.*, ¶ 109.[4]

Mr. Blanton advised Plaintiffs that Defendant "needed to get a new loan with a better rate that was $60,000.00 higher than the original contract so that it appeared to the new lender that Mr. Hodgens was making a larger profit on the home." *Id.*, ¶ 110. "In exchange for executing a new contract, Defendant would give Plaintiffs a $60,000.00 'coupon' off the final cost of the project in an addendum." *Id.*

---

[3] In responding to Defendants' Motion, Plaintiffs expressly argue that three predicate acts support their claim with citations to the relevant allegations of the Complaint. *See* Doc. No. 22 at 6-8. Plaintiffs identify no other predicate acts, nor does the Court's review of the Complaint unveil any other conduct to support additional predicate acts relevant to the RICO claim.

[4] It is unclear to which "Defendant" this allegation pertains. The Complaint references Defendant in the singular throughout even though multiple Defendants have been sued. Because the Contract was entered into between Plaintiffs and Okla Homebuilders, the Court presumes "Defendant" refers to this entity. Regardless, even if the Court were to construe the allegation as a reference to Defendants, collectively, it would not change the analysis.

### Alleged RICO Second Predicate Act

Later in the evening on March 1, 2024, Mr. Blanton called Plaintiffs and "indicated that he had the [new] contract at his house ready to sign and that Mr. Hodgens was pushing Mr. Blanton to get the contract signed that day." *Id.*, ¶ 113.

### Alleged RICO Third Predicate Act

The next day, on March 2, 2024, Mr. Michael called Ms. Suddath to discuss "moving forward with items associated with the house" and during that call, Ms. Suddath told Mr. Michael "that she was frustrated most with the request for Plaintiffs to sign the new contract" but Mr. Michael "feigned ignorance of the contract." *Id.*, ¶¶ 115-117.[5]  Two days later, on March 4, 2024, "Mr. Michael admitted that his phone call to Ms. Suddath two days earlier was a result of Mr. Hodgens' pressure on Mr. Michael to get Plaintiffs to sign the new agreement." *Id.*, ¶ 120.

## IV.  Discussion

RICO provides a civil cause of action for treble damages to anyone injured "by reason of" certain racketeering activity. 18 U.S.C. §§ 1964(c), 1962.  "To plead a valid RICO claim, a plaintiff must plausibly allege that a defendant (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Johnson v. Heath*, 56 F.4th 851, 858 (10th Cir. 2022) (internal quotation marks and citation omitted).  Defendants challenge,

---

[5] Mr. Michael is not a named Defendant.  The Complaint identifies Mr. Michael as "the Construction Manager" for Okla Homebuilders.  Compl. ¶ 56.  In Plaintiffs' Response, Mr. Michael is identified as an "employee and representative of" Okla Real Estate.  *See* Doc. No. 21 at 8.

inter alia, the sufficiency of Plaintiffs' allegations with respect to the third element – a "pattern" of racketeering activity.[6]

"A 'pattern' requires at least two predicate acts." *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (citing 18 U.S.C. § 1961(5)). And those predicate acts themselves must amount to or otherwise constitute a threat of continuing racketeering activity. *Id*. This continuity requirement expresses congressional intent that "RICO reach activities that amount to or threaten long-term criminal activity." *Id*. (citing *H.J., Inc. v. Northwestern Bell Tele. Co*., 492 U.S. 229, 243 n. 4 (1989)).

"'Continuity' is both a closed-and open-ended concept: closed-ended referring to a closed period of repeated conduct and open-ended referring to conduct that by its nature projects into the future with a threat of repetition." *Resol. Tr. Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id*. A closed-ended series of predicate acts is not sufficient to support a finding of a pattern of racketeering activity, however, where those acts "constitute[ ] a single scheme to accomplish 'one discrete goal,' directed at one individual with no potential to extend to other persons or entities." *SIL-FLO, Inc. v. SFHC, Inc*., 917 F.2d 1507, 1516 (10th Cir. 1990).

---

[6] "Section 1961(1) contains an exhaustive list of acts of 'racketeering,' commonly referred to as 'predicate acts.'" *Beck v. Prupis*, 529 U.S. 494, 497 n. 2 (2000). Plaintiffs allege bank fraud as the basis for the predicate acts. *See* 18 U.S.C. § 1961(1)(B); 18 U.S.C. § 1344.

Open-ended continuity "may be established by showing that the predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit, or that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise." *Resol. Tr.*, 998 F.2d at 1543. "Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 (10th Cir. 1989).

Plaintiffs' Complaint alleges a single scheme pursuant to which one or more Defendants intended to coerce Plaintiffs into signing a new agreement, the terms of which would not be disclosed to the new lender who would be providing the construction loan to Okla Homebuilders. Plaintiffs allege such conduct was intended to defraud the new lender.

As the Tenth Circuit has recognized, continuity is "centrally a temporal concept" which requires consideration of the "duration of the related predicate acts." *Resol. Tr.*, 998 F.2d at 1543. As argued in their Response, and as alleged in the Complaint, the three predicate acts occurred over a two-day period. *See* Doc. No. 21 at 7-8.[7] This is not a substantial period of time as required to establish closed-ended continuity. *Resol. Tr.*, 998 F.2d at 1543 ("Predicate acts extending over a few weeks or months are insufficient to show closed-ended continuity.").

---

[7] Although Plaintiffs argue the predicate acts identified are "nonexhaustive", *see* Doc. No. 21 at 7, they wholly fail to allege any facts to demonstrate additional predicate acts nor do they address any such additional facts in their Response.

Nor do Plaintiffs' allegations demonstrate any sufficiently extensive scheme upon which to find closed-ended continuity. *See Johnson*, 56 F.4th at 860 (in addition to duration, a court must consider the extensiveness of the alleged racketeering scheme determined by factors such as "the number of victims, the number of racketeering acts, the variety of racketeering acts, whether the injuries were distinct, the complexity and size of the scheme, and the nature or character of the enterprise.").[8]

And the Complaint fails to allege facts to show "a distinct threat of long-term racketeering activity," thus foreclosing a claim based on open-ended continuity. *Resol. Tr.*, 998 F.2d at 1543; *see also Bixler*, 596 F.3d at 761 (finding a complaint subject to dismissal for failing to demonstrate continuity with allegations of the type of long-term criminal activity that RICO was enacted to address); *Gotfredson v. Larsen LP*, 432 F. Supp.2d 1163, 1176 (D. Colo. 2006) (to establish open-ended continuity, much like how a plaintiff can establish closed-ended continuity, one must sufficiently allege "a clear threat of future criminal conduct" (first citing *Erikson v. Farmers Grp., Inc.*, 151 Fed. App'x 672, 677 (10th Cir. 2005); and then citing *Phelps*, 886 F.2d at 1273). To the contrary, the

---

[8] Plaintiffs argue that when they refused to sign the new agreement, Defendants retaliated against them "by entering into a new purchase agreement with a new potential purchaser – perhaps one who was complicit in the Defendants' scheme to defraud a financial institution." *See* Doc. No. 21 at 8. But this argument is based on speculation and not on facts alleged in the Complaint. In any event, Plaintiffs speculative argument fails to demonstrate the alleged racketeering scheme was in any way extensive – a determination pursuant to which a court must seek "a natural and commonsense result." *Johnson*, 56 F.4th at 861 (cleaned up).

conduct as alleged involves a one-time attempt to obtain a construction loan under fraudulent terms.[9]

Notably, even though Defendants' Motion expressly raises the deficiency of Plaintiffs' continuity allegations, Plaintiffs do not even attempt to address this deficiency in their Response. For the reasons discussed, Plaintiffs have not stated a plausible claim for relief under RICO. Instead, "[a]t most, what has been alleged is a business deal gone sour . . . and various other torts by the defendants." *Johnson*, 56 F.4th at 862.[10]

## V.     Leave to Amend/ Dismissal with Prejudice

In their response, Plaintiffs seek leave to amend to correct any pleading deficiencies. *See* Doc. No. 21 at 9. But Plaintiffs do not identify additional facts that might support a RICO claim, nor have they filed any formal motion requesting leave to amend. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) ("We have long held that bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court.").

In addition, Plaintiffs' request for leave to amend fails to comply with the Court's local rules. *See* LCvR 7.1(c) and 15.1. Moreover, the time for amending pleadings expired prior to the filing of Plaintiffs' response. *See* Scheduling Order [Doc. No. 16]. Plaintiffs'

---

[9] Defendants vehemently deny any conduct concerning the loan was fraudulent. But the Court need not decide that issue. Even assuming such conduct were fraudulent, it is insufficient to rise to the level of a pattern of racketeering activity.

[10] Defendants challenge Plaintiffs' RICO claim based on other pleading deficiencies as well. Because the Court finds judgment on the pleadings is proper for failure to sufficiently allege a pattern of racketeering activity, the Court need not address Defendants' additional challenges.

conclusory request for leave to amend is unaccompanied by the required showing of good cause. *See* Fed. R. Civ. P. 16(b)(4).

Finally, any amendment would be futile and, therefore, the RICO claim should be dismissed with prejudice. *See Johnson v. Metro. Prop. & Cas. Ins. Co.*, 97 F.4th 1223, 1232 (10th Cir. 2024) ("An amendment is futile if, as amended, it would be subject to dismissal."); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."). As set forth, Plaintiffs' allegations fail to demonstrate a pattern of racketeering activity. In responding to Defendants' Motion, Plaintiffs could have addressed this issue, but instead dodged it. And Plaintiffs could have identified additional facts in a properly filed motion for leave to amend, but chose not to do so. For all of these reasons, the Court finds leave to amend is not warranted and is futile.

## VI. <u>Supplemental Jurisdiction</u>

As to Plaintiffs' remaining state-law claims, the Court declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over state law claims, where, as here, "the district court has dismissed all claims over which it has original jurisdiction."). In making this determination, the Court has considered the fact that Defendants have expressly requested such relief, the early stage of litigation, convenience, fairness and comity. *See, e.g., Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1239 (10th Cir. 2020) (citing *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 n. 7 (1988)).  Furthermore, the Tenth Circuit has consistently determined that "'[w]hen all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims.'"  *VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1150 (10th Cir. 2017) (emphasis added) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)); *see also Johnson*, 56 F.4th at 862 n. 4 (finding district court did not abuse its discretion in declining to exercise supplemental jurisdiction over state-law claims after dismissing sole federal claim brought pursuant to RICO).  Nothing before the Court suggests that this is the unusual case in which the Court should exercise supplemental jurisdiction notwithstanding dismissal of the sole federal claim brought.   In this respect, the Court notes that Plaintiffs, in responding to Defendants' Motion, leave the issue wholly unaddressed.

## VII.   Notice of Lis Pendens

Shortly after removal of this action to federal court, Plaintiffs filed a Notice of Pendency of Action (Lis Pendens) [Doc. No. 5] (Notice).  The Notice reflects that it has been recorded with the County Clerk of Oklahoma County.  *See id*.  The Notice identifies this action is pending and arises from the Contract at issue.  *Id*.

This Court has dismissed the RICO claim, without leave to amend.  And the Court has declined to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.  Consequently, there is no longer a pending lawsuit to support the lis pendens filed

by Plaintiffs. The Court, therefore, discharges the lis pendens.[11] This ruling is not intended to affect Plaintiffs' ability to file a lis pendens in the future should Plaintiffs proceed in state court. Based on this ruling, the Court deems moot Defendants' Motion for Temporary Restraining Order and Permanent Injunction with Brief in Support.

## VIII. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [Doc. No. 17], construed as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), is GRANTED and Plaintiff's RICO claim is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Court DECLINES to exercise SUPPLEMENTAL JURISDICTION over the remaining state-law claims and those claims are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the lis pendens is discharged and Defendants' Motion for Temporary Restraining Order and Permanent Injunction with Brief in Support [Doc. No. 19] is DENIED as MOOT.

IT IS SO ORDERED this 8th day of November, 2024.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[11] As the Oklahoma Supreme Court has explained, "[l]is pendens is to be viewed as a device by which the courts acquire the power or control over property involved in a suit for the period during which the action remains pending and before final judgment is entered." *White v. Wensauer*, 702 P.2d 15, 18, (Okla. 1985).